UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| NORTH KENT SEWER AUTHORITY, | Case No. 1:23-cv-317 |
| Plaintiff, | Honorable Paul L. Maloney |
| v | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| U.S. SPECIALTY INSURANCE COMPANY, a Delaware corporation, | |
| Defendant. | |

_____/

| | |
|---|---|
| Douglas A. Donnell (P33187)<br>Mika Meyers PLC<br>Attorneys for Plaintiff<br>900 Monroe Avenue NW<br>Grand Rapids, MI 49503<br>(616) 632-8000<br>ddonnell@mikameyers.com | Clinton Cameron (P45567)<br>Alexander Ross (IL#6283882)<br>Clyde & Co. US LLP<br>55 West Monroe St.<br>Suite 3000<br>Chicago, IL 60603<br>(312) 635-7000<br>Alexander.ross@clydeco.us |

_____/

NOW COMES Plaintiff North Kent Sewer Authority ("NKSA"), by and through its attorneys, Mika Meyers PLC, and for its First Amended Complaint against Defendant U.S. Specialty Insurance Company ("USSIC"), states and alleges as follows:

1. Plaintiff NKSA is public authority incorporated under Public Act 233 of 1955 with its principal place of business located at 4775 Coit Avenue NE, Grand Rapids, MI 49525 (the "Property"). Plaintiff NKSA operates a wastewater treatment plant located at the above address to treat sewage received from five area municipalities, the City of Rockford and the Townships of Cannon, Plainfield, Alpine and Courtland.

03270802 1

2.      Defendant USSIC is a Delaware Corporation with its principal place of business in Texas.  USSIC and is licensed to do business in the State of Michigan with its Registered Agent located at National Registered Agents, Inc., 40600 Ann Arbor Rd E, Plymouth, Michigan.  USSIC insured Plaintiff's building at the Property for the period July 1, 2021 through July 1, 2022.

3.      The incident giving rise to this claim occurred on March 6, 2022, while Defendant's insurance policy was in full force and effect, at the insured's Property located in Kent County, Michigan.

4.      The amount in controversy in this claim exceeds $75,000 and this Court has jurisdiction to hear this matter.

5.      Venue in the Western District of Michigan is proper because the insured Property damaged on March 6, 2022, is located in Kent County and Defendant does business in Kent County including, but not limited to, insuring Plaintiff's Property located in Kent County.

6.      Plaintiff's claims herein arise out of an insurance policy issued by Defendant USSIC to Plaintiff, Policy No. PKG8130135.  Said policy of insurance insured Plaintiff against damage caused by wind events, such as the event which occurred on March 6, 2022.  Defendant is in possession of a complete copy of the subject insurance policy.

7.      At approximately 9:00 a.m. on the morning of March 6, 2022, very high winds were experienced at Plaintiff's Property causing sections of the metal roof to be lifted and bent and other sections of the metal roof to be blown completely off the roof deck, landing in the yard adjacent to the building.

8.      Immediately following the wind event which damaged large portions of the roof and completely removed a section of the roof, Plaintiff was able to secure a local contractor to come on site to complete repairs that were needed to temporarily get the building sealed and

prevent any further interior damage from occurring. These measures were described by The Garland Co. as "emergency mitigation repairs."

9. More specifically, Plaintiff retained Excel Roofing to place a temporary weather barrier where the wind had completely torn off sections of the roof and to secure with additional temporary fasteners those portions of the roof which had been lifted and/or had been torn off by the wind and were vulnerable to additional predictable wind events. This work was performed by Excel Roofing at a cost to Plaintiff of $6,500. These measures were expressly temporary in nature until a permanent repair could be implemented. A copy of Excel Roofing's invoice is attached as **Exhibit A**. A photograph of the building roof showing those panels that had been lifted and temporary re-fastened are outlined in red on the photograph attached as **Exhibit B**.

10. In a report prepared by The Garland Co. dated March 23, 2022, the temporary repairs to the section of roof that had been lifted, but not blown completely off the roof, were described as follows, "this repair, while not a permanent solution, should help the building withstand some of the high wind event [sic] we are surely going to have over the next coming months." See Garland Photo Report dated March 23, 2022, attached as **Exhibit C**.

11. Prior to March 6, 2022, Plaintiff had retained its engineers to evaluate the need for repair or replacement of the building roof based upon problems it had observed with the roof fasteners resulting in leakage inside the building. At the time of the March 6, 2022 wind event, no action had yet been taken to repair the roof.

12. In 2021, Plaintiff contacted Defendant's insurer to see if Plaintiff's property insurance would cover the cost of repairing the roof because of the deteriorating roof fasteners and was told by Defendant's claims adjuster that coverage would not be triggered until and unless there was damage to the roof caused by an insured event, like high winds.

13. At the time Defendant informed Plaintiff that coverage would not be provided for roof repairs until actual damage to the roof occurred from an insured event, it did not advise Plaintiff that Plaintiff needed to perform the repairs because of the deteriorating fasteners or take any other action in order for Plaintiff's insurance policy to remain effective in covering wind damage to the roof.  Rather, Plaintiff was told "wait until there is wind damage and then submit a claim."

14. Plaintiff's engineers evaluated the damage caused by the March 6 wind event immediately following the wind event and determined that the panels along the edge of the roof lines had been lifted but not entirely blown off by the wind and needed to be replaced to accomplish a permanent repair to the roof.  The engineers did not believe that the temporary measures taken immediately following the March 6, 2022 event constituted permanent repairs and were little more than a stop-gap measure to mitigate additional damage from subsequent wind events until a permanent repair could be accomplished.

15. Despite the temporary nature of the repairs on the sections lifted by the wind event and the need for a more permanent repair, Defendant has refused to pay for any permanent repair of these sections of the roof, limiting its coverage under the insurance policy to only the area where the wind had completely blown off the roof panels.  A copy of the payment summary by Defendant is attached as **Exhibit D**.  Plaintiff refused to accept Defendant's payment of $36,402.74 in satisfaction of Plaintiff's claim and thus no payment from Defendant has actually been deposited into Plaintiff's account.

16. Plaintiff's engineers informed Plaintiff that repair or replacement of only the roof edge sections shown on **Ex. A** is not feasible or a viable solution.  Rather, the entire roof needed to be replaced.  For this reason, Plaintiff solicited bids to replace the roof, including the sections

damaged on March 6, 2022, and the winning bid was awarded to Hoekstra Roofing Company for $1,212,000.

17. The roof replacement has been completed and Plaintiff has incurred $1,212,000 for permanent repairs and $6,500 for temporary emergency repairs, totaling $1,218,500.

18. Defendant has breached its contract of insurance by failing to pay for the cost of repairing the damage caused by wind on March 6, 2022.  Plaintiff is entitled to be reimbursed fully for the damage caused by the wind event, including both permanent and emergency repairs.

WHEREFORE, North Kent Sewer Authority prays for a judgment of this Court awarding North Kent Sewer Authority its damages in an amount to be determined above $25,000.00, together with interest, costs and attorneys' fees incurred herein and such other relief as this Court may deem just and equitable.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated:  April 11, 2023       By:  /s/ Douglas A. Donnell
                                  Douglas A. Donnell (P33187)
                                  900 Monroe Avenue, NW
                                  Grand Rapids, MI 49503
                                  (616) 632-8000

## JURY DEMAND

The Plaintiff demands a jury for all actions and issues in this litigation that are so triable.

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated:  April 11, 2023       By:  /s/ Douglas A. Donnell
                                  Douglas A. Donnell (P33187)
                                  Scott E. Dwyer (P33131)
                                  900 Monroe Avenue, NW
                                  Grand Rapids, MI 49503
                                  (616) 632-8000